# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CLICK BOARDING LLC, | Case No. 21-CV-210 (NEB/BRT) |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |
| SMARTRECRUITERS, INC., | |
| Defendant. | |

Click Boarding LLC sued SmartRecruiters, Inc., alleging that SmartRecruiters was violating a contract in which SmartRecruiters promised to resell Click Boarding's products. Click Boarding moved for a preliminary injunction, which the Court denied. (ECF No. 80 ("PI Order").) After Click Boarding's motion, but before the Court's ruling, SmartRecruiters informed Click Boarding that, in its view, Click Boarding had materially breached the parties' agreement and that, absent cure, it would terminate the agreement for cause. Click Boarding has now filed a second motion for injunctive relief,[1] asking the

---

[1] Although Click Boarding styles its motion as requesting a temporary restraining order, the Court construes the motion as requesting a preliminary injunction because Click Boarding seeks relief that extends beyond 14 days and SmartRecruiters has notice of the motion. Fed. R. Civ. P. 65(a)(1), (b). Click Boarding's counsel stated at argument that it did not object to the Court construing the motion as one for a preliminary injunction rather than one for a temporary restraining order.

Court to enjoin SmartRecruiters from terminating the agreement. For the following reasons, the Court denies the motion.

## BACKGROUND[2]

### I. The Prior Dispute

This is Click Boarding's second request for an injunction in this case. Click Boarding previously asked the Court to order SmartRecruiters to refrain from further breaching the parties' contract. (ECF No. 8, ECF No. 48-1 ("Agreement"), PI Order at 1–5.) The focus of the motion was Click Boarding's allegation that SmartRecruiters sold or attempted to sell its own platform, rather than Click Boarding's platform, to various customers, in violation of SmartRecruiters' obligations under the Agreement.

The Court denied Click Boarding's first motion in April 2021, concluding that, although Click Boarding had shown a likelihood of success in proving that SmartRecruiters had breached the Agreement, it had not established irreparable harm. (PI Order at 6–11.) Specifically, the Court found that the harm alleged by Click Boarding was quantifiable, in part due to a fee schedule attached to the Agreement that quantifies the amount of money that Click Boarding may lose due to SmartRecruiters' sales of its own products to their joint customers. (PI Order at 6-7).

---

[2] The Court has detailed the facts of the case in the PI Order, and recounts here only those necessary to contextualize Click Boarding's current motion. (PI Order at 1–5.)

## II. Subsequent Developments

On April 5, 2021, SmartRecruiters counterclaimed against Click Boarding for breach of contract, unjust enrichment, and declaratory judgment. (ECF No. 53.) Four days later, SmartRecruiters' in-house counsel sent Click Boarding a Notice of Material Breach. (ECF No. 71-1 ("Notice").) In that Notice, SmartRecruiters asserts that Click Boarding had breached Sections 1.5, 3.3, 4.1, and 10.1[3] of the Agreement. (Notice at 2–4.) In its briefing, SmartRecruiters contends that these asserted breaches also include breaches of Click Boarding's obligations under Sections 2.3 and 7.2 of the Agreement. (ECF No. 87 at 29.) The substance of those provisions are as follows:

–Section 1.5 gives SmartRecruiters the right to request that Click Boarding "re-brand" its product with SmartRecruiters' "legally compliant existing branding," a so-called "Private Label." (Agreement § 1.5.) SmartRecruiters charges that Click Boarding had been "unable to provide" this service. (Notice at 2.)

–Section 2.3 obligates Click Boarding to provide customer support for its product ("Onboarding Solution"), as well as general troubleshooting and tech support. (Agreement § 2.3.) The Agreement contains a service agreement laying out these obligations. (Agreement, Ex. C.) According to SmartRecruiters, failing to adequately

---

[3] Section 10.1 requires each party to maintain adequate insurance coverage. (Agreement § 10.1.) Click Boarding apparently erred when sharing its insurance coverage with SmartRecruiters, but has since verified that it possesses the insurance the Agreement requires. SmartRecruiters has thus dropped its assertion that Click Boarding breached Section 10.1. (ECF No. 87 at 24 n.5.)

3

deliver proper service and failing to properly implement the Onboarding Solution for customers is a breach of Section 2.3. (ECF No. 87 at 29.)

–Section 3.3 requires Click Boarding to "provide reasonable sales assistance in support of" SmartRecruiters' sales activities, potentially including calls with SmartRecruiters' employees, giving technical advice to SmartRecruiters' sales representatives, and giving remote and in-person demonstrations of Click Boarding's products. (Agreement § 3.3.) SmartRecruiters asserts that Click Boarding breached Section 3.3 in several ways, including by failing to help SmartRecruiters sell the Onboarding Solution, being unresponsive, performing poorly in front of customers, providing uninformed sales personnel, imposing unreasonable and surprise fees on customers, and failing to fix defects customers identified. (Notice at 2–3.) SmartRecruiters also asserts that a failure to properly implement the Onboarding Solution amounts to a failure to provide "reasonable sales assistance." (ECF No. 87 at 29.)

–Section 4.1 sets out a fee schedule for Click Boarding's products and delineates SmartRecruiters' payment obligations to Click Boarding. (Agreement § 4.1.) SmartRecruiters accuses Click Boarding of altering the fees the parties agreed to by: billing by the hour, rather than a flat fee basis (and therefore overcharging); requiring this payment for tasks that the Agreement already obligated Click Boarding to perform; charging fees that the Agreement does not list; and billing for subscriptions that SmartRecruiters' clients could not access. (Notice at 3; ECF No. 89)

–In Section 7.2, Click Boarding warrants that it will provide the Onboarding Solution "with reasonable skill and care and in a professional manner" and that the Onboarding Solution "will comply with th[e] Agreement." (Agreement § 7.2.) SmartRecruiters alleges that this includes implementing the Onboarding Solution. (ECF No. 87 at 29.)

On April 20, 2021, Click Boarding responded to SmartRecruiters' Notice of Material Breach. (ECF No. 71-2 ("Response").) Click Boarding asserted that SmartRecruiters was simply manufacturing allegations of breach as a litigation tactic, and that its notice was inadequate. (Response at 2–3.[4]) Click Boarding also responded to the notice's substance, attaching documents that it claimed demonstrated that it was not in breach. (*Id.* at 12–65.) Shortly after responding to the notice, Click Boarding filed this motion for injunctive relief in an attempt to halt SmartRecruiters from terminating the agreement. (ECF No. 67.) At argument, it was clear the landscape had shifted: both parties have now decided that the contractual relationship cannot continue in its current form. Click Boarding's request for relief is no longer that the Court order a continuation of the contract; instead, it requests the Court to enjoin SmartRecruiters from selling its onboarding platform to the parties' joint customers. Click Boarding also filed an Amended Complaint. (ECF No. 99.)

---

[4] The Court uses the ECF pagination, unless otherwise noted.

Click Boarding's request to the Court implicates the following provisions of the Agreement:

*Section 1.4 (Non-competition).* During the term of the Agreement, SmartRecruiters agreed to refrain from promoting, marketing, selling, providing, or dealing with "any product or service that competes, directly or indirectly, with the Onboarding Services." (Agreement § 1.4.)

*Section 5.5 (Non-solicitation).* For one year after the Agreement ended (for any reason other than a termination for cause), SmartRecruiters agreed not to "contact, solicit," induce, or convert any customer that used both SmartRecruiters' product and the Onboarding Solution "to another product or service that is a replacement for or competitive with" the Onboarding Solution. (*Id.* § 5.5.) If SmartRecruiters breached this provision, SmartRecruiters agreed to "pay Click Boarding a Customer acquisition fee equal to the last 12 months of fees and other amounts received by and/or payable to Click Boarding from such Customer" before terminating its use of the Onboarding Solution. (*Id.*)

*Section 9.2 (Limitation of Liability).* Except for claims relating to intellectual property violations, liability for breaches of the Agreement cannot not exceed the greater of either: (1) the "amounts paid and owed to Click Boarding" under the Agreement in the "24 months preceding the incident giving rise to liability"; or (2) $3,000,000. (*Id.* ¶ 9.2.)

### III. The "Customer X" Contract

"Customer X" is a joint customer of the parties—that is, a customer that used SmartRecruiters' underlying platform and Click Boarding's Onboarding Solution.[5] (ECF No. 88 ("Epperly Decl.") ¶ 45.) During the period that Customer X used the Onboarding Solution, it had disputes with Click Boarding over what the Onboarding Solution should contain and how it should operate. (*Id.* ¶¶ 52–53; ECF No. 93 ("Wormsbecker Decl.") ¶¶ 3–4.) These disputes—and Click Boarding's alleged inability to resolve them to Customer X's satisfaction—led Customer X to decline to renew its contract for the Onboarding Solution. Customer X continued to use SmartRecruiters' platform, just without Click Boarding's product. (Wormsbecker Decl. ¶ 5; Epperly Decl. ¶¶ 47–51, 53–55; ECF Nos. 88-1, 88-2.)

## ANALYSIS

A preliminary injunction is an "extraordinary" remedy, which the Court never awards "as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). In analyzing a motion for preliminary injunctive relief, the Court considers the four *Dataphase* factors: (1) the potential threat of irreparable harm to the movant in the absence of injunctive relief; (2) the balance of the harms the parties will suffer in the presence or absence of an injunction; (3) the likelihood that the movant will ultimately

---

[5] In the declaration detailing the dispute with Customer X, SmartRecruiters redacted reference to the client and did not provide a pseudonym. (ECF No. 88.) The Court therefore uses "Customer X" to refer to that client.

succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The party seeking the injunction bears the burden of showing that an injunction is proper. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

**I.     Irreparable Harm**

The foundation of issuing an injunction "has always been irreparable harm and inadequacy of legal remedies." *Id.* (citation omitted). In any injunction case, the Court's "threshold inquiry is whether the movant has shown the threat of irreparable injury." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991) (quotation omitted). "[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Bandag, Inc. v. Jack's Tire & Oil Co.*, 190 F.3d 924, 926 (8th Cir. 1999) (citation omitted).

Irreparable harm is present where "a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To show irreparable harm, the movant "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996); *Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1058 (D. Minn. 2013) ("Possible or speculative harm is not enough to justify a preliminary injunction.") (cleaned up).

8

The loss of consumer goodwill or intangible assets like reputation can constitute irreparable injury. *Iowa Utils. Bd.*, 109 F.3d at 426; *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). So can the loss of the benefits of a non-competition or non-solicitation provision. *See Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (quoting *Cherne Indus. Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 92 (Minn. 1979)) (holding, in the context of a permanent injunction, that "[i]rreparable harm 'can be inferred from a trial court's actual finding of a breach [of a restrictive covenant] by the defendant'") (second alteration original).

Click Boarding has failed to show imminent, certain, or great harm meriting equitable relief. *Iowa Utils. Bd.*, 109 F.3d at 425. As the Court previously concluded, the harm here is quantifiable. (PI Order at 6.) Click Boarding has presented no real new argument on this issue. Both parties have walked away from the Agreement—all that is left now is to determine who owes what to whom. The only difference in the possible harm Click Boarding stands to suffer now, as opposed to what it stood to suffer in the first motion, is the size of the harm. The harm Click Boarding asserts is a loss of customer revenue—qualitatively the same harm that the Court previously determined that damages can remedy.

Click Boarding argues that it has showed irreparable harm and cites two cases in support: *Glenwood Bridge* and *Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844 (Minn. 1964). Neither case applies here. *Glenwood Bridge* involved the City of Minneapolis rejecting a

9

construction bid because the plaintiff's contract with its construction workers did not include a potentially unlawful labor stabilization agreement. 940 F.2d at 368. The Eighth Circuit concluded that the plaintiff had shown a likelihood of success and irreparable injury and ordered that the district court enjoin the city from awarding the contract to any party that had such an agreement in its labor contract. *Id.* at 369–73. The court's determination of irreparable harm largely rested on the fact that the city had essentially precluded the plaintiff from bidding on the contract. *Id.* at 372 ("A preliminary injunction, however, will prevent the City from awarding a contract on which, in essence, Glenwood Bridge is precluded from bidding. . . . A preliminary injunction both protects this interest in participating in a legal bidding process and ensures that the contract awarded will be a legal one.") Click Boarding's likely harm does not rest on contracts procured in a similarly unlawful manner—SmartRecruiters is not effectively barring Click Boarding's participation in the marketplace. Click Boarding remains free to market its products to any and all comers. The *Glenwood Bridge* court explicitly recognized that damages could remedy some of the plaintiff's harm, it was only the specific harm of being blocked from the market by illegal conduct that merited the injunction. *Id.* No such conduct is present here.

*Thermorama* is similarly unavailing. First, federal law, not state law, controls the issue of irreparable harm. *Fulton v. Honkamp Krueger Fin. Servs., Inc.*, No. 20-CV-1063 (PJS/DTS), 2020 WL 7041766, at *12 (D. Minn. Dec. 1, 2020). Second, the *Thermorama* court

concluded that the harm at issue was of the kind "which is not susceptible of precise proof" and that the plaintiff "may forfeit as well future benefits which are difficult to evaluate." 125 N.W.2d at 845. The Court has concluded that Click Boarding's damages are quantifiable. (PI Order at 6.)

One of Click Boarding's other arguments against this conclusion is to invoke the limitation of liability clause in the Agreement. Under this clause, Click Boarding contends that the fact that the parties contractually limited recoverable damages renders its harm irreparable because it may suffer damages in excess of this cap. The Court is not persuaded.

First, the only authority Click Boarding cites in support is from New York state trial courts: *Rockwood Pigments NA, Inc. v. Elementis Chromium LP*, No. 651617/2014, 2014 WL 3899214 (N.Y. Sup. Ct. Aug. 4, 2014), *aff'd as modified*, 2 N.Y.S.3d 94 (N.Y. App. Div. 2015), and *Daily Bread Café, Inc. v. City Lights at Queens Landing Inc.*, 851 N.Y.S. 2d 68 (N.Y. Sup. Ct. 2007). Both cases involved a total waiver of monetary damages, not a cap above an already substantial threshold. *Rockwood Pigments*, 2014 WL 3899214, at *1; *Daily Bread Café*, 851 N.Y.S. 2d at 68. Thus, these cases are distinguishable on their facts. And Click Boarding has not provided the Court with any authority within the Eighth Circuit to support its position.

Second, the Court declines to adopt the reasoning of these cases. It would be inequitable to permit Click Boarding to cloak itself in the protection of certain bargained-

for provisions of the Agreement while simultaneously letting it use another bargained-for provision as a sword against SmartRecruiters. Click Boarding claims that the provision for which it bargained now harms it, but Click Boarding gave up its right to obtain full damages for a breach of the Agreement in exchange for SmartRecruiters making the same promise. Having bargained for these contractual provisions, Click Boarding cannot pick and choose the provisions to which it will adhere.

Click Boarding has failed to show a likelihood of irreparable harm in the absence of an injunction.

## II. Likelihood of Success on the Merits[6]

As the movant, Click Boarding carries the burden of showing a likelihood of success on the merits. *Watkins Inc.*, 346 F.3d at 844 (citation omitted). Click Boarding must

---

[6] At argument, the Court asked what, exactly, were the merits at issue. The parties' briefs were not clear on whether Click Boarding was (1) seeking an injunction on a claim it had not yet brought or pleaded (the Complaint contains no allegations that SmartRecruiters breached the Agreement by trying to terminate it in bad faith), or (2) asserting that SmartRecruiters had no likelihood of success on the merits of its breach of contract counterclaim. Click Boarding clarified that it was asserting that SmartRecruiters had no likelihood of success on its counterclaim. Although the Court questions whether it is proper to grant an injunction (or even to bring a motion for one) to a party on a claim brought *against* it, rather than brought *by* it, SmartRecruiters did not raise this issue in its briefing. Because the Court determines that Click Boarding is not entitled to an injunction, it need not resolve the issue and, for purposes of this motion only, considers the merits to be whether Click Boarding has shown a likelihood of success that it will resist SmartRecruiters' breach of contract counterclaim. While such a situation is unusual, it is nonetheless understandable and logical in the context of a request for an equitable remedy. Click Boarding has since filed an Amended Complaint, rendering the question academic. (ECF No. 99.)

show a "reasonable probability of success" or a "fair chance of prevailing." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quotation omitted). This does not require Click Boarding to show that it is more likely than not to succeed against SmartRecruiters' counterclaims. *Dataphase*, 640 F.2d at 113.

For SmartRecruiters to prevail on its breach of contract claim, it must show: (1) the formation of a contract; (2) its performance of any conditions precedent for the defendant's performance; and (3) breach. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (citation omitted). The only question before the Court is whether Click Boarding has shown a likelihood that it did not breach the Agreement.[7]

The record before the Court on the issue of Click Boarding's alleged breach is relatively undeveloped. SmartRecruiters' allegations of breach and the declarations it provides as the factual basis for those allegations are largely general and unspecific. The Court is also skeptical of the timing of SmartRecruiters' allegations. For example, SmartRecruiters' filings indicate that Click Boarding breached Section 1.5 in August

---

[7] Click Boarding asserts that SmartRecruiters has not given adequate notice of the alleged breach of contract and afforded Click Boarding an opportunity to cure. (ECF No. 70 at 25–27; *see* Agreement § 5.2 (requiring terminating party to give allegedly breaching party notice and an opportunity to cure).) In so arguing, Click Boarding cites *Blaine Economic Development Authority v. Royal Electric Co.*, 520 N.W.2d 473, 476–77 (Minn. Ct. App. 1994), and *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 365–66 (Minn. 2009). The Court need not resolve the issue because it concludes that Click Boarding has shown a likelihood that it did not breach the Agreement. The Court notes, however, that SmartRecruiters provided a written notice of breach with an opportunity to cure, unlike in *Valspar*, and that the notice was significantly more detailed than that at issue in *Blaine*.

13

2019—nearly two years ago—but SmartRecruiters only alleged the breach in April 2021, three months after Click Boarding filed this case. (ECF No. 83 ¶¶ 18–26.)

The Court also recognizes that Click Boarding faces the difficulty of essentially having to prove a negative—that it did not materially breach the Agreement—on a sparse and undeveloped record. Click Boarding provides a body of evidence supporting its assertions that it did not breach the Agreement and that SmartRecruiters was pleased with its work. (*See generally* ECF No. 71-2.)

Given the Court's concerns about the timing of SmartRecruiters' allegations, the relatively unspecific nature of SmartRecruiters' allegations and evidence, Click Boarding's difficult-to-prove position and supporting evidence, as well as the overall undeveloped status of the record, the Court will assume that Click Boarding has shown a likelihood of success in defeating SmartRecruiters' claims. The Court emphasizes that this is only a preliminary determination of the merits of the case. But on this record, at this stage in the proceedings, the merits tip towards Click Boarding.

### III. Balance of the Harms

In balancing the harms, the Court weighs the harm that the movant is likely to suffer without the requested injunction against the harm other parties will suffer if the Court issues it. *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993) (citation omitted).

As with Click Boarding's first motion for injunctive relief, the harms here are economic. Any harm Click Boarding has suffered or may suffer is quantifiable and reparable by damages. Because both parties appear to have decided to walk away from the Agreement, the Court cannot conclude that the balance of harms favors one party over the other. Further, as SmartRecruiters noted at argument, Click Boarding's motion requests (as do its actions) that the Court require SmartRecruiters to abide by some provisions of the Agreement, while not requiring the same of Click Boarding. To do so would be inequitable. The Court will not require one party to abide by terms of a contract when the other party need not do so. The balance of harms favors neither party.

**IV.    Public Interest**

In cases like this, contract disputes between private parties, the public interest factor "does not weigh heavily." *Caballo Coal Co. v. Ind. Mich. Power Co.*, 305 F.3d 796, 801 (8th Cir. 2002). Yet it does not serve the public interest to permit "a party to avoid contractual obligations." *Med. Shoppe Int'l*, 336 F.3d at 805. On the other hand, the public has an interest "in unrestrained competition." *Mainstream Fashions Franchising, Inc. v. All These Things LLC*, 453 F. Supp. 3d 1167, 1205 (D. Minn. 2020) (quotation omitted).

Here, the public interest does not support either party. The public has an interest in the enforcement of contracts but also an interest in free competition and innovation.

### V. Weight of the Factors

After weighing all the factors, the Court concludes that Click Boarding is not entitled to a preliminary injunction. Although Click Boarding has shown, on a vague and limited record, some likelihood of success against SmartRecruiters' claim that it has materially breached the Agreement, it has not shown it will likely suffer harm that is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd.*, 109 F.3d at 425 (citation omitted). The balance of the harms and the public interest favor neither party. Click Boarding has failed to carry its burden to show that this case merits injunctive relief.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Click Boarding's Motion for Temporary Restraining Order (ECF No. 67) is DENIED.

Dated: May 10, 2021

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge