## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Click Boarding LLC, | ) |
| | ) |
|     Plaintiff-Counterclaim | ) |
|     Defendant, | ) |
| | )   Case No. 0:21-cv-00210-NEB-BRT |
| v. | ) |
| | ) |
| SmartRecruiters, Inc., | ) |
| | ) |
|     Defendant-Counterclaim | ) |
|     Plaintiff. | ) |
| | ) |
| | ) |

## DEFENDANT SMARTRECRUITERS INC.'S FIRST AMENDED ANSWER, COUNTERCLAIMS, AND JURY DEMAND

Defendant SmartRecruiters, Inc. ("Defendant" or "SmartRecruiters") responds to Plaintiff Click Boarding LLC's ("Plaintiff" or "Click") First Amended Complaint as follows:

## ANSWER

SmartRecruiters answers and otherwise responds to each of the numbered paragraphs of the Complaint as follows:

1.    SmartRecruiters is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and, therefore, denies them.

2.    Admitted.

3.    The allegations of Paragraph 3 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, SmartRecruiters is

1

without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.      SmartRecruiters admits that, in a reseller agreement SmartRecruiters and Click entered (the "Agreement"), attached as Exhibit A, the parties consented to venue in the District of Minnesota.  SmartRecruiters is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4 and, therefore, denies them.

5.      Admitted that the Agreement states that Click Boarding offers a global software, onboarding solution, processes, and related services.

6.      Admitted that SmartRecruiters offers a Human Resources Platform (the "Platform") and that SmartRecruiters and Click entered the Agreement for the resale of Click's onboarding services (the "Click Solution").  Otherwise denied.

7.      Admitted.

8.      The allegations in Paragraph 8 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.  To the extent Paragraph 8 alleges that Click fully complied with its obligations under the Agreement through March 2021, denied.

9.      The allegations in Paragraph 9 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.  To the extent a response is required, and to the extent that Paragraph 9 alleges that Click did not waive, modify, or amend the Agreement, denied.

2

10.     The allegations in Paragraph 10 refer to the Agreement, which speaks for itself.

11.     Admitted that before April 9, 2021, neither SmartRecruiters nor Click had provided written notice to the other party of its intent not to renew the Agreement. Regarding the remaining allegations of Paragraph 11, the Agreement speaks for itself.

12.     The allegations in Paragraph 12 refer to the Agreement, which speaks for itself.  To the extent a response is required, and to the extent Paragraph 12 alleges that the provision of the Agreement regarding competition continues to prohibit SmartRecruiters from promoting, marketing, selling, providing, or dealing with any product or services that competes, directly or indirectly, with the Click Solution, denied.

13.     The allegations in Paragraph 13 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.  To the extent a response is required, and to the extent Paragraph 13 alleges that the provision of the Agreement regarding marketing continues to require SmartRecruiters to use its best efforts to market, advertise, promote, sell, and support the Click Solution, and to use its best efforts to promote the Click Solution to customers and potential customers, denied.

14.     The allegations in Paragraph 14 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.  To the extent a response is required, and to the extent Paragraph 14 alleges that the provision of the Agreement regarding soliciting customer continues to prohibit SmartRecruiters from converting customers to another product or service that is a replacement for or competitive with the Click Solution, denied.

3

15.     The allegations in Paragraph 15 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.

16.     Denied.

17.     Admitted to the extent that SmartRecruiters is in the process of developing onboarding capabilities within the Platform ("SmartOnboard") and that SmartRecruiters has announced the development of SmartOnboard to the market.  Otherwise denied.

18.     Admitted that SmartRecruiters notified Click in December 2020 that SmartRecruiters had offered a customer the option of using the Click Solution or SmartOnboard, and that SmartRecruiters has since confirmed in writing that the customer still has the option to use SmartOnboard when it is available.  Otherwise denied.

19.     Admitted to the extent SmartRecruiters has informed other prospective customers that they may use SmartOnboard when SmartOnboard is available.  Otherwise denied.

20.     SmartRecruiters lacks knowledge or information sufficient to form a belief as to the truth of the allegation concerning the typical contract length for onboarding services, and therefore denies the allegation.  Otherwise denied.

21.     The allegations in Paragraph 21 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.  To the extent a response is required, and to the extent that Paragraph 21 alleges that the provision of the Agreement regarding treatment of customers following termination or expiration of the Agreement (i) continues to prohibit SmartRecruiters from terminating any then-existing customer agreements or contacting, soliciting, or inducing any customer to convert that

4

customer to another product or service that is competitive with the Click Solution, or (ii) continues to permit Click to market, promote, and sell its products and services to all actual and potential customers of SmartRecruiters, denied.

22.     Admitted.

23.     Admitted that, on April 9, 2021, SmartRecruiters' legal counsel sent a letter via email to Click's Chief Revenue Officer providing notice to Click of its material breaches of the Agreement.  Otherwise, denied.

24.     Admitted.

25.     Admitted that the letter specifically identified four provisions of the Agreement that Click had materially breached.

26.     Admitted that Click initially provided an incorrect insurance certificate and that the certificate, once corrected, showed that Click had adequate insurance coverage to comply with the Agreement.   Otherwise, denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Admitted that, on April 12, 2021, a new customer decided to use the Click Solution.  Otherwise, denied.

31.     Denied.

32.     Admitted that SmartRecruiters has not to date provided complete copies of the agreements in question. Otherwise, denied.

33.     Denied.

5

34.   Denied.

35.   Admitted.

36.   Admitted that SmartRecruiters has not paid $273,972.50 in amounts invoiced by Click, which Click has asserted are owed under the two customer contracts referenced in Paragraph 35.  Otherwise, denied.

37.   Denied.

## COUNT I
### (Breach of Contract)

38.   SmartRecruiters' responses to Paragraphs 1-37 of the Complaint are incorporated fully herein.

39.   The allegations of Paragraph 39 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

40.   Denied.

41.   Denied.

42.   Denied.

43.   Denied.

44.   Denied.

45.   Denied.

46.   Denied.

## COUNT II
### (Declaratory Judgment)

47.   SmartRecruiters' responses to Paragraphs 1-46 of the Complaint are incorporated fully herein.

6

48.     The allegations of Paragraph 48 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     SmartRecruiters admits that before April 9, 2021, neither it nor Click had provided written notice to the other party of its intent not to renew the Agreement. Regarding the remaining allegations of Paragraph 55, the Agreement speaks for itself.

56.     The allegations in Paragraph 56 state a legal conclusion to which no response is required.  The allegations also relate to the Agreement, which speaks for itself.  To the extent that a response is required, denied.

57.     The allegations in Paragraph 57 state a legal conclusion to which no response is required.

58.     SmartRecruiters admits that the Complaint filed by Click purports to seek declaratory judgment from this Court but denies that Click is entitled to any such relief or that SmartRecruiters has any liability therefor.

7

## COUNT III
### (Injunctive Relief)

59.     SmartRecruiters' responses to Paragraphs 1-58 of the Complaint are incorporated fully herein.

60.     The allegations of Paragraph 60 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

61.     Denied.

62.     SmartRecruiters admits that the Complaint filed by Click purports to seek injunctive relief from this Court but denies that Click is entitled to any such relief or that SmartRecruiters has any liability therefor.

63.     SmartRecruiters admits that the Complaint filed by Click purports to seek injunctive relief from this Court but denies that Click is entitled to any such relief or that SmartRecruiters has any liability therefor.

## COUNT IV
### (Unjust Enrichment)

64.     SmartRecruiters' responses to Paragraphs 1-64 of the Complaint are incorporated fully herein.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

SmartRecruiters admits that Click demands a jury trial.

SmartRecruiters specifically denies all allegations in the Complaint not expressly admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred because Plaintiff materially breached its obligations under the Agreement upon which its claims are based.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and/or waiver.

### THIRD DEFENSE

Plaintiff's claims are barred, to the extent that Plaintiff has failed to mitigate its damages.

### FOURTH DEFENSE

Plaintiff's claims are barred, at least in part, to the extent that Plaintiff's alleged injuries are speculative, remote, and/or conjectural.

### FIFTH DEFENSE

Plaintiff is not entitled to injunctive relief and cannot satisfy the requirements applicable to any request for injunctive relief in any form, including, without limitation, the requirement that Plaintiff demonstrate it will suffer irreparable harm in the absence of an injunction.

## **SEVENTH DEFENSE**

Plaintiff's claim for unjust enrichment is barred because plaintiff cannot prevail on a theory of unjust enrichment where it alleges that the parties' relationship is governed by a contract.

## **SIXTH DEFENSE**

SmartRecruiters reserves the right to amend its Answer to assert additional defenses and counterclaims that are discovered during the course of its litigation.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, SmartRecruiters hereby asserts amended counterclaims against Click as follows[1]:

## INTRODUCTION

1.     When Click signed the Agreement with SmartRecruiters in March 2018, Click committed to providing certain services to SmartRecruiters to make sure SmartRecruiters can properly serve its customers.  When a customer wants onboarding capabilities along with SmartRecruiters' platform, SmartRecruiters resells Click's Solution.  SmartRecruiters relies on Click to provide essential services—as stated in the Agreement—both during and after the sales process.

2.     Click is either unable or unwilling to provide the services it committed to providing in the Agreement, and Click refuses to honor the prices for which the Agreement requires that it offer those services.

3.     Click has failed to offer the "reasonable sales assistance" it is required to provide under the Agreement, which is essential to both parties' ability to sell.  On occasions, Click's sales assistance has been non-existent.  At other times, Click's contribution has been so far from "reasonable sales" conduct that it has hindered, rather than assisted, SmartRecruiters.  Click is frequently a liability to SmartRecruiters in the sales process.

---

[1] Defined terms in the Answer have the same meaning in the Counterclaims.

4.     Click has harmed SmartRecruiters' reputation and cost SmartRecruiters significant sales of the Platform.

5.     Where SmartRecruiters has closed sales and has moved on to implementation of the Platform, Click has regularly fallen short of its obligations under the Agreement to meet customer specifications and to collaborate with SmartRecruiters on implementation.

6.     Customers have voiced their displeasure to SmartRecruiters about Click's substandard implementation work.   The situation has threatened SmartRecruiters' customer relationships, its prospects of renewing those relationships, and its reputation in the market.

7.     Meanwhile, though the Agreement specifies the prices SmartRecruiters will pay for Click's services, Click has unilaterally inflated its prices.  It has deviated from the set prices in pitching to prospects and clients, costing SmartRecruiters sales.  Click has even raised its prices after customers have signed contracts, leaving SmartRecruiters with little choice but to pay Click's ransom.   As well as causing further stresses on SmartRecruiters' relationships with its customers, these price deviations have immediately harmed SmartRecruiters' bottom line, as SmartRecruiters frequently has been unable to pass them on to customers.

8.     SmartRecruiters is entitled to substantial damages for Click's many breaches of the Agreement.

9.     SmartRecruiters terminated the Agreement, based on Click's material breaches, on May 11, 2021.

10.     After SmartRecruiters terminated the Agreement, Click falsely stated to SmartRecruiters' customers that the termination jeopardized the customers' data and their compliance with applicable data privacy laws—including the European Union's General Data Protection Regulation where penalties for violations can reach the higher of $20 million Euros or 4% of a company's global revenue.  Click also falsely stated that SmartRecruiters was at fault for failing to ensure continuous service to customers.

11.     These false statements harmed SmartRecruiters' reputation and led several of SmartRecruiters' customers to stop paying SmartRecruiters the amounts specified under the contracts between SmartRecruiters and the customers.

## PARTIES

12.     SmartRecruiters is a Delaware corporation with its principal place of business in San Francisco, California.

13.     Upon information and belief, and based upon Click's allegations in the Complaint, Click is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.  Click has thirteen members, none of which are citizens of California or Delaware.  Each individual member is either a resident or citizen of Nevada, Minnesota, Michigan, Georgia, Florida, or Arizona.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because SmartRecruiters and Click are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13

15.     To the extent that the Court has subject matter jurisdiction over the claims asserted by Click in its Complaint, this Court also has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 because the counterclaims are so related to the claims asserted by Click that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is proper in this District because the parties consented in the Agreement to venue in the District of Minnesota and each of the parties' claims and defenses arises from or relates to the Agreement, because Click resides in this District, and because a substantial part of the events giving rise to SmartRecruiters' counterclaims occurred in this District.

## FACTS

### SmartRecruiters Partners with Clients to Optimize the Hiring Process via SmartRecruiters' Platform

17.     SmartRecruiters provides its customers a "software as a service" solution to help them attract, select, and hire talent.

18.     SmartRecruiters uses its innovative Platform, combining a suite of software products, to provide end-to-end recruiting capabilities.  The Platform can help an employer with all the necessary tasks in the hiring process, from job advertising to onboarding.

19.     SmartRecruiters seeks to partner with each customer to make the hiring process straightforward and smooth.

20.     When SmartRecruiters is pitching its Platform, and after it has signed a deal to provide the Platform, SmartRecruiters works closely with each customer to make sure the Platform meets the customer's needs.

21.     Each customer's hiring process works slightly differently, and customers' needs from the Platform vary.  SmartRecruiters strives to develop a deep understanding of each customer's needs, show the customer the Platform's options, and make sure the Platform can cater to the customer's needs.

22.     By combining its powerful, user-friendly Platform and its exemplary customer service, SmartRecruiters has become a leader in the industry.  As one recent example, SmartRecruiters received the highest ranking as the worldwide leader in the 2020 IDC MarketScape: Worldwide Modern Talen Acquisition (TA) Suites for Large Enterprise.

## SmartRecruiters and Click Entered Into the Agreement to Sell to Customers Needing Onboarding Functionality

23.     Onboarding functionality, or an onboarding "solution," is an optional aspect of a human resources ("HR") platform like SmartRecruiters' Platform.

24.     An onboarding solution allows employers to complete the tasks necessary for a new hire to start work.  It provides electronic I-9 (immigration compliance), and federal and state tax forms, for new hires to complete.  It also allows the employers and new hires to perform various other tasks, and tracks progress for the employer.

25.     SmartRecruiters does not currently have a functional "native" onboarding solution, in the sense that SmartRecruiters does not currently have an internally created and serviced onboarding solution that it can offer customers.

26.     The Click Solution is an onboarding solution that customers can use along with an HR platform like SmartRecruiters' Platform.

27.     SmartRecruiters and Click signed the Agreement on March 12, 2018.

## The Agreement Requires Click to Provide a Private Label, or "White Label," Version of the Onboarding Services upon Request

28.     Section 1.5 of the Agreement requires Click to provide, upon SmartRecruiters' request, a "Private Label" version of the Click Solution.

29.     A "Private Label" solution is also referred to in the industry as a "white label" solution.

30.     A private label, or white label, solution is one that is provided by a third party but functions and appears as though it is part of the same platform.

31.     Here, it would mean Click providing a solution that functions and appears as though it is part of SmartRecruiters' Platform, delivering a seamless user experience.

## The Agreement Requires Click to Provide Reasonable Sales Assistance and to Work Collaboratively and Promptly to Implement the Click Solution After Sale

32.     The Agreement contains various provisions to make sure Click provides the necessary assistance to SmartRecruiters and its customers to generate sales—both of the

Click Solution and of SmartRecruiters' Platform to customers needing onboarding functionality—and create satisfied customers.

33.     Section 3.3 of the Agreement requires Click to provide "reasonable sales assistance in support of [SmartRecruiters'] sales activities at no additional charge."  This reasonable sales assistance may include "telephone calls with [SmartRecruiters] employees, provision of technical information relating to the [Click Solution] through teleconferences with [SmartRecruiters] employees and organizations registered as opportunities."  Click also agreed to "provide resources for on-site demonstrations or meetings with Reseller at specific accounts."

34.     Once a customer signs a contract with SmartRecruiters that includes the Click Solution, SmartRecruiters begins work on implementing the Platform so that the Platform is fully functional and meets the customer's specifications.

35.     Click must also participate in the implementation process.

36.     Click agreed to perform "Onboarding Services," which includes the services related to the Click Solution, "with reasonable skill and care and in a professional manner" under Section 7.2 of the Agreement.

37.     Section 2.3 of the Agreement requires Click to provide services to customers, during the implementation phase and beyond, in connection with customers' use of the Click Solution.

38.     Section 2.3 further provides that Click must meet certain performance standards in its services to customers.  Those standards are set out in Exhibit C to the Agreement.

17

### The Agreement Sets the Prices Click May Charge SmartRecruiters

39.     The Agreement provides, in Section 4.1, that the fees due to Click are those enumerated in Exhibit A to the Agreement, (Exhibit 1, at 13-15), except as the parties otherwise agree in writing.

40.     Under the Agreement, Click may charge three different types of fees.

*i.     Subscription Fees*

41.     First, Click may charge Subscription Fees (including Customer Overage Fees).

42.     When a customer buys the Click Solution as part of the Platform, SmartRecruiters serves as the reseller.  The customer must pay an Annual Subscription Fee to SmartRecruiters.  SmartRecruiters must then pay Click a Reseller Fee.

43.     Those are specified in a table in Exhibit A, (Exhibit 1, Agreement, Ex. A, at 13-14), which appears as follows:

| Software Subscription | | | | | Overage Fees (Based on Candidates) | |
| MSRP (to Customer) | | | | Reseller Fee (to Click Boarding) for Software Subscription | Maximum Candidate Allowance for Customer | Reseller Fee (to Click Boarding) for Candidate Overage |
| Minimum Employee Size of Customer | Maximum Employee Size of Customer | Price on a Per Employee Basis | Annual Subscription Fee to Customer | | | |
|---|---|---|---|---|---|---|
| 316,668 | 333,333 | $1.58 | $525,000 | $262,500 | 100,000 | $4.59 |
| 300,001 | 316,667 | $1.61 | $508,250 | $254,125 | 95,000 | $2.68 |
| 283,334 | 300,000 | $1.65 | $495,000 | $247,500 | 90,000 | $2.75 |
| 266,668 | 283,333 | $1.70 | $480,250 | $240,125 | 85,000 | $2.83 |
| 250,001 | 266,667 | $1.76 | $468,000 | $234,000 | 80,000 | $2.93 |

44.     In practice, SmartRecruiters frequently gives customers a heavy discount on the Annual Subscription Fee, or even waives it.

45.     But, regardless of the Annual Subscription Fee SmartRecruiters in fact charges, SmartRecruiters must pay the Full Reseller Fee to Click.

46.     The Annual Software Subscription includes:

   a.  Three Full User Licenses, allowing three employees of the customer to access the Click Solution;

   b.  Up to 100 gigabytes of storage of customer data;

   c.  Click's standard forms library (forms customers may use in their onboarding processes without additional charge);

   d.  Branded candidate portals (the portal, displaying the employer's branding, that walks new hires through the onboarding process);

   e.  Capabilities for Form I-9 (a form employers must use to verify the identity and work authorization of new hires)  and e-Verify (a federal government process that compares information in the I-9 to records available to the Social Security Administration and the Department of Homeland Security); and

   f.  A Form W-4 wizard (a process that uses dynamic functionality to help complete an employee's federal tax withholding form).

47.     The Annual Subscription Fee to be paid by a customer, and the Reseller Fee to be paid to Click, do not begin accruing under the Agreement until the Click Solution is actually functional for the customer—*i.e.*, until the customer has the subscription for which the fee is charged.

## *ii. Fees for Additional User Licenses*

48.     Second, Click charges a fee for additional user licenses, beyond the three included as part of the Subscription Fee.   (Exhibit 1, Agreement, Ex. A, at 15.) SmartRecruiters may bill the customer up to $144 per license, and must pay a Reseller Fee to Click of $72 per license.

## *iii. Fees for Professional Services Items*

49.     Third, Click charges for "Professional Services Items."   These are fees for work Click must perform to implement the Click Solution for the customer.

50.     The Professional Services Items are provided in a table within Exhibit A to the Agreement, (Exhibit 1, Agreement, Ex. A, at 15):

| Professional Service Items | |
|---|---|
| **HRIS Integrations** | **Reseller Fee (to Click Boarding)** |
| ADP - API | $600/Integration |
| ADP - Data Bridge | $400/Integration |
| ADP - Candidate upload (performed manually by Customer) | $400/Integration |
| UltiPro | Call Click Boarding for Custom Quote |
| Namely | $800/Integration |
| Bamboo HR | Call Click Boarding for Custom Quote |
| **Other Data and Form Output** | **Reseller Fee (to Click Boarding)** |
| Generic Data Export | $200/Export Setup |
| PDF Export | $200/Export Setup |
| **Custom Forms Configuration** | **Reseller Fee (to Click Boarding)** |
| Email template | $200/Template |
| Policy Form, Customer provided HTML | $200/Form |
| Policy Form, without Customer provided HTML | $300/Page |
| Data input form | $800/Form |
| Video - hosted by Customer | $100/Video |

20

## Click Has Failed to Provide a White-Label Solution, Despite SmartRecruiters' Request

51.     At a meeting in San Francisco in August 2019, Rebecca Carr, then SmartRecruiters' Vice President of Product, asked Click—via Click's Chief Revenue Officer, Christine Marino, and her colleagues—to provide a white-label version of the Click Solution.

52.     Click said it would not create a white-label solution unless SmartRecruiters gave Click additional concessions beyond the terms of the existing Agreement.  It asked, for example, for a greater share of SmartRecruiters' revenue, and for SmartRecruiters to take on the entire burden of selling the Click Solution, without Click's assistance.

53.     SmartRecruiters continued to be open to the investment in a white-label solution.

54.     Click never discussed or engaged around such an investment with SmartRecruiters after the conversation in August 2019.

55.     Over time, it became increasingly clear that Click did not have the system functionality or ability in its personnel to produce a white-label solution without significant additional investment.

56.     Click was unwilling to make that kind of investment and thus unwilling to comply with the Agreement.

**Click Has Failed to Provide Reasonable Sales Assistance**

57.     Click has not provided reasonable sales assistance to SmartRecruiters in selling the Click Solution to customers or prospective customers looking to buy SmartRecruiters' Platform and the Click Solution.

58.     Click has either lacked the capacity or the willingness to help SmartRecruiters sell the Click Solution to customers in a timely manner.

59.     On occasions, when SmartRecruiters has asked Click to be available for a "scoping call"—an important call in which SmartRecruiters and Click determine a customer's specific needs for the implementation of the Platform and the onboarding solution—Click has been unable to commit to a call unless SmartRecruiters provided *two weeks' notice* of the call.

60.     After the scoping call, Click has sometimes taken *two more weeks* to send SmartRecruiters and customers the paperwork that is an essential step in the contracting process.

61.     At other steps in the process, as well, SmartRecruiters has had great difficulty getting Click personnel on the phone to answer questions, getting Click to join calls with customers, or provide various required information or documents.

62.     Customers needed Click to be responsive immediately—or, at the very most, within hours of the request.  Instead, Click has taken days and weeks to provide sales support.

63.     On numerous occasions, Click has been unresponsive when SmartRecruiters has requested "SC enablement," a process that allows SmartRecruiters access so that

22

SmartRecruiters can show customers how the Click Solution would work with the Platform.  SmartRecruiters has had to chase Click for a response, and often has not received enablement until days or weeks after a competitor in Click's position would have provided enablement.  This has inhibited SmartRecruiters' sales of the Click Solution.

64.     Click's lack of responsiveness to SmartRecruiters and customers has caused frustration among customers, disrupted the sales process, and cost customers sales.

65.     When Click has ultimately participated in sales activities, it has often performed very poorly.

66.     Click has often failed to make any trained salespeople available for key interactions with customers.

67.     Instead, Click has put forward personnel who lack sales skills, and who are able to do nothing more than answer a customer's technical questions about the Click Solution.

68.     Merely answering technical questions about a product is not equivalent to selling the product.

69.     Click personnel have also been poorly prepared for sales activities.

70.     One non-negotiable standard in the industry is that sellers must be thoroughly prepared for customer meetings and calls.

71.     SmartRecruiters' Platform is configured to meet customers' very specific organization structures, hiring processes, and preferences.

72.     SmartRecruiters' Platform is also one of the first aspects of a customer's business that a customer's new hire experiences.

23

73. Accordingly, to be competitive in the marketplace, SmartRecruiters must come to every customer interaction with a deep knowledge of the customer's business. SmartRecruiters must customize its presentation, and the demonstration of its Platform, to the specific customer.

74. In contrast, Click has frequently been unprepared in customer interactions, and has delivered standard-form demonstrations and presentations, with no differentiation from one customer to the next.

75. Click has refused to provide any flexibility to customers.

76. While SmartRecruiters strives to find solutions that work for customers, Click simply offers a single one-size-fits-all solution. If the single solution does not work for the customer, Click requires that the customer pay exorbitant fees to "customize" the Click Solution, even when other more straightforward options are available.

77. The fees Click charges customers to "customize" the Click Solution have sometimes exceeded the amount SmartRecruiters is charging for the entire Platform.

78. Moreover, Click has repeatedly made costly errors on straightforward aspects of the sales process.

79. As one example, on multiple occasions, Click has told a customer *after the customer has signed a contract* to purchase the Platform and the Click Solution that Click had not included an item in its pricing and would need to provide updated pricing. The items Click has missed have frequently included items that the customer explicitly discussed in the scoping call and/or items that are inherent in any contract for onboarding services.

24

80.     Click's errors have added unnecessary complications and delays to the sales process and have frustrated customers.

81.     Click's interactions with customers have given customers the impression that the Click Solution is a substandard add-on to the SmartRecruiters Platform.

82.     Click's interactions with customers have given customers the impression that, whereas SmartRecruiters treats customers as partners, Click is operating merely as a vendor, treating customers as mere revenue sources.

83.     Click's interactions with customers have given customers the impression that Click will not be good to work with.

84.     Click's interactions with customers have given customers the impression that the Platform and the Click Solution are two separate, non-integrated systems, which undermines SmartRecruiters' goal of pitching the Click Solution and the Platform as a cohesive system.

85.     Click's participation in the sales process has frequently had the effect of alienating customers who were otherwise interested in purchasing SmartRecruiters' Platform.

86.     SmartRecruiters has lost sales as a result, as customers have decided to buy an HR platform from a competitor rather than buying SmartRecruiters' Platform and having to work with Click.

87.     Click's poor sales performance has also harmed SmartRecruiters' customer relationships and its reputation in the market.

25

**Click Has Failed to Work in a Prompt, Collaborative Manner to Implement the Click Solution, to the Detriment of SmartRecruiters and its Customers**

88.     Click has failed to work promptly, or to collaborate with SmartRecruiters, to provide an adequate implementation process for customers.

89.     Under Section 2.3 of the Agreement, Click agreed to provide customer support in accordance with a "Service Level Agreement," Exhibit C to the Agreement, which required using "reasonable commercial efforts to diagnose and provide a work-around or correct" problems with the Click Solution and meeting certain deadlines to respond to and fix problems.

90.     Click has often failed to complete its work on implementation on time, sometimes taking weeks or months longer than SmartRecruiters and the customer have requested, and far exceeding the amount of time most competitors would take to perform the same task.

91.     Though only 22 of SmartRecruiters' roughly 800 customers have purchased the Click Solution under the Agreement, those 22 customers account for 20% of all monthly support tickets submitted to SmartRecruiters' customer service department.

92.     Click has often been unresponsive during the implementation process to important requests or questions from SmartRecruiters and the customer.

93.     SmartRecruiters and its customers have frequently been unable to determine how and when in the implementation process Click would complete its required tasks.

94.     SmartRecruiters has received complaints from customers as a result.

95.     SmartRecruiters has also received complaints about the quality of Click's work.  Even when Click has completed tasks, they have been performed inadequately and customers have discovered serious functionality problems.

96.     Click has frequently been unresponsive to requests that it fix these issues.

97.     On other occasions, Click has told SmartRecruiters to fix the issue, but has not given SmartRecruiters the access or assistance necessary to fix it.

98.     As one of several examples, senior sales leaders received an email in late March 2021 from a frustrated customer, discussing concerns with Click's work on implementation.  The email provided a long but non-exhaustive list of issues.

99.     It has taken Click around one year so far to implement the Click Solution for this customer.  Even after a year, significant problems remain.

100.    Given the size of the customer (less than 3,000 employees) and the relative simplicity of the task, SmartRecruiters and the customer would have expected implementation to have been satisfactorily completed many months earlier, as competitors in Click's position would have done.

101.    Among many other issues, the email highlighted that:

   a. Click had incorrectly pulled in candidates from the customer's prior system, and Click then claimed nothing could be done to fix the errors;

   b. Click had left work on some template offer letters unfinished, which caused the customer's session on the Click Solution to log out at unpredictable times, disrupting the customer's testing process;

27

      c.   Click had been unresponsive when the customer reported issues, and had then incorrectly blamed issues on system maintenance; and

      d.   Click had frequently been unable to provide answers to questions during weekly meetings, which prolonged the customer's implementation timeline.

102.   The customer is frustrated with the process as a result of Click's failings, which harms SmartRecruiters' relationship with the customer and SmartRecruiters' reputation in the marketplace.

103.   As a result of Click's poor implementation work, SmartRecruiters will likely have to offer discounts to the customer, and/or may have to absorb costs from Click that the customer is unwilling to pay.

104.   The same is true for other customers, as well. Click's poor work on implementation has cost SmartRecruiters revenue, harmed customer relationships, and damaged SmartRecruiters' reputation.

## Click Has Billed SmartRecruiters Amounts that Far Exceed the Amounts Provided in the Contract

105.   Click has billed SmartRecruiters for Professional Services sums significantly greater than the sums, listed in Exhibit A to the Agreement, that the parties agreed would be paid for those services.

106.   For example, for integrations between systems that are listed in the Professional Services table in Exhibit A, Click has insisted on charging hourly fees for the work, rather than the flat, per-integration Reseller Fees listed in the table. This has resulted in Click billing amounts significantly greater than the Reseller Fees listed in that table.

107.   As another example, for configuring custom forms—work that is, again, listed in a table in Exhibit A for a flat, per-form Reseller Fee—Click has insisted on charging per-hour rates.  These rates have resulted in Click billing amounts significantly greater than the Reseller Fees listed in the table.

108.   Click has refused to perform Professional Services tasks that are required under the Agreement unless SmartRecruiters pays the inflated fees Click is demanding.

109.   Since October 2020, Click has started billing SmartRecruiters for Click's annual hosting fees.

110.   Nowhere in the Agreement, including in Exhibit A, does the Agreement state that Click may charge annual hosting fees.

111.   The Agreement states: "Click Boarding shall be responsible for hosting and maintaining the Onboarding Services."

112.   SmartRecruiters has had to absorb many of the excess fees Click has charged because, for two reasons, customers have been unhappy with the fees.

113.   First, numerous customers have been unhappy with the sums of money Click is charging, which have seemed excessive (and are indeed excessive, in comparison to the fees for which SmartRecruiters bargained in the Agreement).

114.   Second, numerous customers have been unhappy that Click has sprung unexpected fees on the customers late in the sales process, sometimes after the signing of the contract.

115.   Accordingly, SmartRecruiters has sustained significant damages as a result of the excessive Reseller Fees.

116.    Where SmartRecruiters has passed the inflated Reseller Fees on to customers, in whole or in part, the excessive fees and the timing and manner in which Click has charged them has frustrated customers.  This has harmed SmartRecruiters' customer relationships and its reputation in the market.

## Click Has Billed SmartRecruiters for Subscription Fees for Subscriptions that Have Not Been Active

117.    Click has often billed Subscription Fees to SmartRecruiters before the Click Solution has been available to those customers—*i.e.*, before there is any active subscription.

118.    In several cases, SmartRecruiters has absorbed these fees because customers have been unwilling to pay them.

119.    In other cases, SmartRecruiters has passed these on to customers, in whole or part.  This has frustrated customers, which has harmed SmartRecruiters' customer relationships and its reputation in the market.

## Click Has Not Worked with SmartRecruiters to Resolve These Issues

120.    SmartRecruiters has routinely explained to Click that Click's performance of its responsibilities under the Agreement—on sales, implementation, and billing—has been unsatisfactory.

121.    SmartRecruiters has raised the issues that have arisen with specific customers, as well as the general pattern of Click falling short of its obligations.

122.    Click has been either unable or unwilling to improve its performance.

123. Click has generally responded with hostility when SmartRecruiters has raised these issues, and has usually blamed SmartRecruiters or simply asserted that SmartRecruiters needs to be filling the voids in Click's performance.

**Click Has Refused to Perform Its Implementation Obligations Under the Agreement**

124. On May 6, 2021, Click claimed that it was "unable to provide further support" to SmartRecruiters for active implementation because SmartRecruiters was "delinquent" or had not made payments.

125. SmartRecruiters is not refusing to pay Click for services properly billed but, instead, is asking that Click reimburse SmartRecruiters for overpayments made to Click.

**Following Termination of the Agreement, Click Made False Statements to
SmartRecruiters' Customers**

126. After termination of the Agreement, Click's Chief Revenue Officer, Christine Marino, contacted one or more of SmartRecruiters' customers and alleged that the Data Processing Agreement entered by Click and SmartRecruiters ("DPA") had been terminated with the Agreement.

127. This statement was false.

128. The DPA provides instructions to Click and SmartRecruiters for the protection of personal data, as required by various data protection laws, when providing services to customers under the Agreement.

129. Under the DPA, the term of the DPA is the same as the term of the Agreement.

130.   The Agreement provides that its term includes the period following termination of the Agreement during which customers have unexpired subscriptions with Click for the Click Solution.

131.   Therefore, SmartRecruiters and Click still have obligations under both the Agreement and DPA with respect to customers with unexpired Click Solution subscriptions.

132.   Upon information or belief, even after counsel for Click and SmartRecruiters discussed this issue, Click continued to tell customers that the DPA situation was ambiguous, stating to at least one customer, for example, "[t]he termination of the agreement by SmartRecruiters created ambiguity for all affected clients . . . related to roles and responsibilities of personal data handling."

133.   Click also made statements to one or more of SmartRecruiters' customers alleging that SmartRecruiters refused to pay for services by Click for said customers moving forward and refused to reach an agreement that would allow SmartRecruiters and Click to continue serving customers.

134.   These statements were false.

135.   As a result of Click's false statements, customers have indicated that they will no longer pay SmartRecruiters for onboarding services under their contracts with SmartRecruiters.   Instead, these customers will enter contracts directly with Click for onboarding services.

136.   Customers that have indicated that they will no longer pay SmartRecruiters for onboarding services under their contracts with SmartRecruiters are in breach of their contracts with SmartRecruiters and such breach has been procured by Click.

137.   Click's statements negatively affect SmartRecruiters' business and its reputation both with its customers and potential customers.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

138.   SmartRecruiters realleges and incorporates by reference and restates as if fully set forth here each of the foregoing allegations of these counterclaims, inclusive.

139.    The Agreement is a valid and binding contract.

140.   SmartRecruiters has fully and properly performed all its material obligations under the Agreement.

141.   Click has materially breached section 1.5 of the Agreement by failing to provide a private-label, or white-label, version of the Click Solution upon SmartRecruiters' request.

142.   Click has materially breached section 3.3 of the Agreement by failing to provide reasonable sales assistance.

143.   Click has materially breached sections 2.3, 3.3, and 7.2 of the Agreement by failing to work on the implementation in a prompt and collaborative manner.

144.   Click has materially breached section 4.1 of the Agreement by billing SmartRecruiters fees that exceed the fees that are permissible under the Agreement.

33

145.    Click has materially breached section 4.1 of the Agreement by failing to perform work required under the Agreement unless SmartRecruiters pays the inflated fees Click is demanding.

146.    Click has materially breached section 4.1 of the Agreement by billing SmartRecruiters fees for subscriptions to services customers cannot yet access.

147.    Click has materially breached sections 3.1 and 4.1 of the Agreement by billing SmartRecruiters for annual hosting fees.

148.    Click has materially breached the Agreement by refusing to perform implementation obligations under the Agreement.

149.    As a direct and proximate cause of Click's breaches of the Agreement, SmartRecruiters has suffered significant financial damages, including damages from impermissible fees, damages from sales SmartRecruiters has lost as a result of Click's breaches, and damages from sales disruptions and remedial action resulting from Click's failure to maintain sufficient insurance policies and coverage.

150.    As a direct and proximate cause of Click's breaches of the Agreement, SmartRecruiters' relationships with customers have been harmed, which has caused SmartRecruiters financial and non-financial damages and likely will cause SmartRecruiters to suffer further damages in the future.

151.    As a direct and proximate cause of Click's breaches of the Agreement, SmartRecruiters' reputation in the market has suffered, which has led to, and will continue to lead to, significant financial and non-financial losses.

## SECOND CLAIM FOR RELIEF
### (In the Alternative to Breach of Contract, Unjust Enrichment)

152.    SmartRecruiters realleges and incorporates by reference and restates as if fully set forth here each of the foregoing allegations in these counterclaims, inclusive.

153.    SmartRecruiters conferred benefits on Click, including, but not limited to, resales of the Click Solution and payments.

154.    Click knew of the benefit SmartRecruiters conferred on Click.

155.    Click has retained the benefit.

156.    It would be unjust for Click to retain the benefit.

157.    To avoid the unjust enrichment of Click, Click should be required to compensate SmartRecruiters in the amount of the benefit conferred.

## THIRD CLAIM FOR RELIEF
### (Defamation)

158.    SmartRecruiters reallages and incorporates by reference and restates as if fully set forth here each of the foregoing allegations in these counterclaims, inclusive.

159.    Click has made defamatory statements to SmartRecruiters' customers regarding SmartRecruiters.

160.    Click's statements to SmartRecruiters' customers regarding SmartRecruiters were false.

161.    Click's statements to SmartRecruiters' customers regarding SmartRecruiters tend to harm SmartRecruiters' reputation and to lower SmartRecruiters' in the estimation of the community.

162.    Click's statements affect SmartRecruiters in SmartRecruiters' business.

163.    Neither SmartRecruiters nor Click are public figures and Click's defamatory statements do not concern a matter of public concern.

164.    SmartRecruiters need not prove damages because Click's defamatory statements constitute defamation per se.

165.    Alternatively, to the extent that SmartRecruiters must prove damages, SmartRecruiters has suffered and will suffer reputational harm.

**FOURTH CLAIM FOR RELIEF**
**(Tortious Interference with Contract)**

166.    SmartRecruiters reallages and incorporates by reference and restates as if fully set forth here each of the foregoing allegations in these counterclaims, inclusive.

167.    SmartRecruiters' contracts with its customers are valid and binding contracts.

168.    Click was aware of SmartRecruiters' contracts with SmartRecruiters' customers.

169.    Click intentionally procured one or more customer's breach of its contract with SmartRecruiters by choosing to no longer pay SmartRecruiters for onboarding services under its contracts with SmartRecruiters.

170.    Click acted without justification.

171.    As a direct and proximate cause of Click's interference with SmartRecruiters' contracts with its customers, SmartRecruiters will lose contracts and the revenue that would have resulted from those contracts.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Judgment)

172.    SmartRecruiters realleges and incorporates by reference and restates as if fully set forth here each of the foregoing allegations in these counterclaims, inclusive.

173.    The Agreement is a valid and binding contract.

174.    Click has materially breached the Agreement by failing to provide reasonable sales assistance.

175.    Click has materially breached the Agreement by failing to work on the implementation in a prompt and collaborative manner.

176.    Click has materially breached the Agreement by billing SmartRecruiters fees that exceed the fees that are permissible under the Agreement.

177.    Click has materially breached the Agreement by failing to perform work required under the Agreement unless SmartRecruiters pays the inflated fees Click is demanding.

178.    Click has materially breached the Agreement by billing SmartRecruiters fees for subscriptions to services customers cannot yet access.

179.    SmartRecruiters has been damaged as a result of Click's breaches.

180.    A justiciable controversy exists between the parties in the matter.

181.    SmartRecruiters is entitled to a declaratory judgment that SmartRecruiters was entitled to terminate the Agreement for cause based on Click's material breaches of the Agreement.

WHEREFORE, having fully responded to the Complaint and asserted its Counterclaims, SmartRecruiters respectfully requests that:

1. All claims asserted by Click be dismissed with prejudice;

2. Click's demand for damages, equitable relief, or other relief be denied;

3. Click recover nothing from SmartRecruiters through this action;

4. SmartRecruiters recover damages from Click for breach of contract or, in the alternative, that Click compensate SmartRecruiters for unjust enrichment, in an amount to be determined at trial;

5. SmartRecruiters recover damages from Click for defamation and for tortious interference with contract;

6. SmartRecruiters recover pre-judgment and post-judgment interest as allowed by law;

7. SmartRecruiters recover attorneys' fees from Click to the extent allowed by law;

8. The Court issue a declaratory judgment that SmartRecruiters was entitled to terminate the Agreement for cause based on Click's material breaches of the Agreement; and

9. SmartRecruiters receive other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

SmartRecruiters hereby demands trial by jury as to all issues in this action so triable as of right.

Dated:  May 24, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Edward F. Roche*

Jeffrey P. Justman (#390413)
  *jeff.justman@faegredrinker.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP

Edward F. Roche (Admitted *Pro Hac Vice*) (N.C. Bar # 55434)
  *eroche@smithlaw.com*
PO Box 2611
Raleigh, NC 27602-2611
Telephone: (919) 821-1220

*Attorneys for Defendant SmartRecruiters, Inc.*